IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KYLE S.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 6:20-cv-01453-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On September 8, 2017, Plaintiff filed an application for benefits, alleging disability as of June 28, 2013. Tr. 72.[2] Plaintiff was forty-one years old at the time of his alleged disability onset. Tr. 74. Plaintiff has completed three years of college. Tr. 202. Plaintiff alleges disability due to post concussion brain injury, dislocated shoulder, post-traumatic stress disorder (PTSD), and back injury. Tr. 74. Following a hearing, the Administrative Law Judge (ALJ) denied Plaintiff's claim by a written decision dated October 30, 2019. Tr. 18-28. Plaintiff now seeks judicial review of the ALJ's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

Plaintiff argues the ALJ erred in (1) discounting the medical opinions of Dr. Sichi and Dr. Boyd; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) improperly rejecting lay witness statements of Plaintiff's wife. Pl.'s Br. 15, 20, 25, ECF No. 18. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. §

2 – OPINION AND ORDER

404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: neurocognitive disorder, depression, and anxiety. Tr. 20. The ALJ concluded Plaintiff had the RFC to perform a full range of work at all exertional levels with certain nonexertional restrictions including: occasional interaction with coworkers, supervisors, and the general public; no team-based work activity; and no timed production work. Tr. 22-26. Plaintiff argues the ALJ did not capture the extent of his limitations. The Court addresses each of Plaintiff's arguments in turn.

1. **The ALJ's Weighing of the Medical Opinions**

Under the new SSA regulations (post March 27, 2017), an ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. In doing so, an ALJ must consider the following factors: (1) supportability; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c) (2017). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. *Id.* § 416.920c(b)(2).

The ALJ applied the new regulations and found part of Dr. Sichi's opinion, concerning Plaintiff's interaction difficulties, persuasive. Tr. 25. The ALJ found the part of the opinion

concerning limitations on complex work and Plaintiff's need for special accommodations "less persuasive" due to a lack of objective support. Tr. 25-26. Plaintiff argues the ALJ failed to adequately account for the portion of Dr. Sichi's opinion the ALJ found persuasive and failed to provide legally sufficient reasons to discount the remainder of Dr. Sichi's opinion. Pl.'s Br. 17-18.

Supportability is determined by the degree to which objective medical evidence and explanations support a medical opinion. 20 C.F.R. § 416.920c(c)(1). In assessing the supportability of Dr. Sichi's opinion, the ALJ notes "[i]nteraction difficulties are consistent with the record, including more than one instance of aggressive behavior, supported by the physician's treating notes." Tr. 25 (citing Tr. 359, 364, 568). The ALJ properly accounted for Plaintiff's interaction difficulties by limiting Plaintiff to no more than occasional interaction with coworkers, supervisors, and the general public, and no team-based work activity. Tr. 22. The ALJ further found, the "[i]nability to [perform] complex work less supportable, but seems reasonable based on his mental health records which show consistent subjective complaints of having more difficulty performing tasks now, compared to before his accident." Tr. 25 (citing Tr. 364, 394, 396 402, 423). However, the ALJ determined this part of Dr. Sichi's opinion was less persuasive "due to the subjective rather than objective support for these suggested limits." Tr. 25. Despite finding this portion less persuasive, the ALJ limited Plaintiff to no timed production work, no work involving timed production quotas, and identified three jobs at step five, which each have a general educational development (GED) Reasoning Level of 2 or lower. Tr. 27. These jobs include electrical accessories assembler (DOT 729.687-010), cleaner 2 (DOT 919.687-014), and touch-up screener (DOT 726.684-110). Tr. 27. GED Level 2 reasoning abilities require the worker to "[a]pply commonsense understanding to carry out detailed but

4 – OPINION AND ORDER

uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from [a] standardized situation." DOT Appendix C, 1991 WL 688702 (setting forth GED reasoning levels "required of the worker for satisfactory job performance").

Additionally, the ALJ notes that Dr. Sichi "does not think the claimant can perform full time work without special accommodations." Tr. 26 (citing Tr. 587). The ALJ determined this part of Dr. Sichi's opinion is not "supported in Dr. Sichi's notes by objective evidence, given the claimant's ongoing activities, such as running an eBay business, picking up and repairing/parting out cars, air travel, and so on." Tr. 26 (citing Tr. 43-47; 358-99).

Consistency is determined by the degree to which a medical opinion is consistent with other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2). In assessing the consistency of Dr. Sichi's opinion, the ALJ compared Dr. Sichi's findings to other medical opinions and against Plaintiff's medical record and testimony. Tr. 25-26. Specifically, the ALJ notes interaction difficulties and challenges with complex work are consistent with the record, but Plaintiff's inability to perform full-time work without special accommodations was not consistent with the record. Tr. 25-26. In finding parts of Dr. Sichi's opinion "less persuasive," the ALJ considered and articulated the required factors.

With respect to Dr. Boyd, the ALJ applied the new regulations and found Dr. Boyd's opinion "not persuasive." Tr. 25. Plaintiff argues the ALJ erred in discounting Dr. Boyd's opinion by improperly evaluating evidence in the record that showed support for Dr. Boyd's opinion and "progressive worsening" of Plaintiff's impairments. Pl.'s Br. 19-20.

In assessing the supportability of Dr. Boyd's opinion, the ALJ notes that although Dr. Boyd's opinion was based on objective testing, the "final conclusion is at odds with said testing, given that the claimant's test results showed mostly normal/average abilities." Tr. 25 (citing 574-

75). The ALJ also found Dr. Boyd's opinion vague. Tr. 25. *See Ford v. Saul*, 950 F.3d 1141, 1156-58 (9th Cir. 2020) (where Ninth Circuit found vague findings are "not useful . . . [in] specify[ing a claimant's] functional limits.").

In assessing the consistency of Dr. Boyd's opinion, the ALJ notes the opinion "is inconsistent with the record as a whole, particularly the claimant's largely normal mental status examination findings throughout the record. Tr. 25 (citing Tr. 354, 404-08, 416, 430, 432, 434, 436-437, 439-442, 563, 565-66). In finding Dr. Boyd's opinion "not persuasive," the ALJ considered and articulated the required factors.

The ALJ's medical opinion findings are supported by specific, legitimate reasons and substantial evidence.

### 2. Plaintiff's Subjective Allegations

Plaintiff alleged cognitive issues, anger, anxiety, emotional instability, communication problems, nightmares, and difficulty completing paperwork. Tr. 223-24. Plaintiff testified at the hearing that his impairments inhibit him from performing substantial gainful activity since an accident in 2013. Tr. 39. Plaintiff also reported taking care of his son, bathing and feeding his dog, preparing simple meals, doing dishes and laundry, vacuuming, and running simple errands. Tr. 224-226.

The ALJ found Plaintiff's "allegations as to the intensity of symptoms are not entirely consistent with the objective evidence in the record." Tr. 24. The ALJ noted Plaintiff's testimony "that since an accident that had a resulting head injury back in June 2013, he cannot work due to reduced cognitive ability and anxiety." Tr. 24. The ALJ acknowledges the record shows Plaintiff was in a car accident in June 2013 that resulted in brain injury, and also notes that Plaintiff "has sought medication and gone to therapy to manage mental health issues that allegedly resulted

from this accident." Tr. 24 (citing Tr. 544, 567, 358-99, 526, 565). However, the ALJ found that "the record indicates that the claimant's cognitive and social limitations are not so severe as to result in the symptoms alleged." Tr. 24. Plaintiff argues the ALJ erred by rejecting his subjective allegations about the intensity, persistency, and limiting effects of his symptoms without providing "specific, clear[,] and convincing reasons." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

Although Plaintiff argues the ALJ improperly discounted his subjective statements regarding cognitive issues, anger, emotional instability, and communication problems, the ALJ's conclusion is supported by substantial evidence in the record and is consistent with the RFC limiting Plaintiff to jobs with nonexertional limitations in interacting with others and no timed production work. The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

The ALJ pointed to several of the above factors and provided specific, clear, and convincing medical evidence that controverted Plaintiff's allegations. First, the ALJ notes that "the vast majority of mental status examinations in the record show normal cognitive function, including normal judgment and insight, adequate comprehension, intact memory, cooperative behavior,

7 – OPINION AND ORDER

and concentration within normal limits." Tr. 24 (citing Tr. 354, 404-08, 416, 430, 432, 434, 436-437, 439-442, 563, 565-66). Additionally, the ALJ found Plaintiff's "[t]esting also showed mild cognitive impairment, with the majority of the claimants cognitive abilities falling at or above average, though the examiner opined that the claimant may not be able to function at those levels in a less structured setting" and "[t]esting performed at a different time confirmed the claimant's mental abilities to be average." Tr. 24 (citing Tr. 574-75, 577; 406-08).

The ALJ also notes Plaintiff's "response to treatment has been successful in reducing the claimant's symptoms when recommendations are followed; however, the claimant has not consistently followed recommendations." Tr. 24. Specifically, the ALJ states:

> [w]hen taking treatment/medication as directed, the record notes that the claimant is able to push past his symptoms and work longer than usual with aid from some of his medication, and there is more than one entry noting that the claimant's symptoms improve noticeably on medication, that his medication is "working well," and he has fewer dissociative episodes. But symptoms are worse when the claimant has not consistently followed treatment recommendation. In fact, the night the claimant left his house because he felt he could be a danger to others or maybe himself, he had stopped taking one medication for several days and admitted to an improvement in symptoms when he started taking this medication again.

Tr. 24 (citing Tr. 435, 513, 515, 520, 522-23, 563, 580, 583; 439, 516-518, 520-1, 525-27).

The ALJ also contrasted Plaintiff's subjective symptom allegations with his activities of daily living. Specifically, the ALJ determined Plaintiff's "level of activities during the alleged period of disability are inconsistent with the severity of symptoms alleged." Tr. 24. The ALJ supports this determination with the record that shows since the accident in 2013, Plaintiff has worked on cars and sold car parts, which was corroborated by Plaintiff's testimony that he had picked up cars and was dissembling them to sell the parts on eBay, and performing the bulk of household duties, including paying bills. Tr. 24 (citing Tr. 513, 583). Additionally, he visited his mother in Reno where he had a relaxing time. Tr. 24 (citing Tr. 523). The ALJ further notes that Plaintiff

"also needs to keep around 5 projects going around the house, and he has experimented some with bitcoin stocks, frequently changing his strategy." Tr. 24 (citing Tr. 525). Additionally, the ALJ highlights that the record shows Plaintiff "does yoga stretches because of his high activity level and probably walks close to 10 miles daily." Tr. 24 (citing Tr. 569). During the hearing, Plaintiff also admitted that he quit college in early 2014 due to financial aid difficulties, rather than due to cognitive/mental problems. Tr. 24 (citing Tr. 63-64).

The ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523. Because the ALJ provided "specific, clear[,] and convincing reasons" for finding Plaintiff less-than credible regarding the extent of his limitations, the ALJ did not err in giving little weight to Plaintiff's testimony regarding those limitations. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

### 3. Lay Witness Testimony

In addition to Plaintiff's own subjective allegations, Plaintiff's wife also submitted statements in support of Plaintiff's disability. Tr. 245-52. Plaintiff argues that the ALJ erred by failing to consider this lay witness testimony. Pl.'s Br. 25. Defendant concedes that the ALJ did not evaluate this lay witness testimony as part of his decision but contends that this error was harmless. Def.'s Br. 14-16, ECF No. 19.

Lay witness testimony regarding a claimant's symptoms or limitations is "competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

1993)). Typically, an ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, failure to provide a reason for discounting lay witness testimony is harmless where "the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina*, 674 F.3d at 1122 (cleaned up) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

To the extent Plaintiff's wife offered opinions regarding Plaintiff's limitations, her opinion generally mirrored Plaintiff's own allegations. As the lay testimony generally described the same limitations alleged by Plaintiff, and as the ALJ did not err in rejecting Plaintiff's own testimony as to the extent of his limitations, any error in not addressing the lay testimony of Plaintiff's wife is harmless. *Id.*

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 24th day of May, 2022.

        /s/ Michael J. McShane
        Michael McShane
        United States District Judge